**UNITED STATES of America, Plaintiff,**

v.

**RIVERSIDE LABORATORIES, INC., Defendant.**

No. 86 C 9083.

United States District Court, N.D. Illinois, E.D.

Jan. 27, 1988.

---

Gail C. Ginsberg, Asst. U.S. Atty., Chicago, Ill., William R. Sierks, U.S. Dept. of Justice, Environmental Enforcement Section Land & Natural Resources Div., Washington, D.C., Eleni Skoulikas, U.S. E.P.A., Region V, Chicago, Ill., for plaintiff.

Jeffrey C. Fort, Susan M. Franzetti, James J. DeNapoli, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This case is before the court on the defendant Riverside's motion to stay the proceeding pending resolution of Riverside's

two state court actions. For the following reasons, this court grants the motion to stay on the basis of *Pullman* and *Colorado River* abstention principles.

## I. Facts

On November 21, 1986, the United States Environmental Protection Agency (USEPA) filed this suit against Riverside Laboratories, Inc. (Riverside), pursuant to section 113(b)(2) of the Clean Air Act, 42 U.S.C. § 7413(b)(2) (1982) (Act). Under the Act, the USEPA must establish "national ambient air quality standards" (NAAQS) for pollutants, such as ozone, that "cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare...." *Id.* § 7408(a)(1)(A). In order to implement, maintain, and enforce the NAAQS, each state is required to develop and submit for USEPA approval a comprehensive regulatory strategy known as a "state implementation plan" (SIP). *Id.* § 7410(a)(1). The SIP includes regulations for emissions limitations that specify the amount of each pollutant that lawfully can be emitted. Each state is free to choose whatever emissions limitations it deems appropriate, provided that its SIP complies with the minimum standards set by the NAAQS. *See Train v. Natural Resources Defense Council, Inc.*, 421 U.S. 60, 79, 95 S.Ct. 1470, 1482, 43 L.Ed.2d 731 (1975) ("[S]o long as the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation.").

Once the USEPA approves the SIP, it has the power under section 113(b) to bring enforcement actions in United States District Court against violators of the SIP.[1]

---

1. 42 U.S.C. § 7413(b)(2) provides, in pertinent part:

   (b) Violations by owners or operators of major stationary sources

   The Administrator [of the USEPA] shall, in the case of any person which is the owner or operator of a major stationary source, and may, in the case of any other person, commence a civil action for a permanent or temporary injunction, or to assess and recover a

civil penalty of not more than $25,000 per day of violation, or both, whenever such person—

   ....

   (2) violates any requirement of an applicable implementation plan (A) during any period of Federally assumed enforcement, or (B) more than 30 days after having been notified by the Administrator under subsection (a)(1) of this section of a finding that such person is violating such requirement....

As a prerequisite to such an enforcement action, however, the USEPA must first issue a "notice of violation" (NOV) to both the alleged violator and the state authorities. 42 U.S.C. § 7413(a)(1).[2] If after thirty days the violation continues unabated, the USEPA then can bring suit in federal court.

In this case the pertinent regulations, adopted by the Illinois Pollution Control Board (IPCB) and approved by the USEPA, govern the emission of volatile organic compounds (VOC's)—substances that contribute to the formation of ozone. These regulations include, in part, VOC emissions limitations for paper coating and fabric coating operations. *See* Ill.Admin.Code tit. 35, § 215.204(c), (e) (1985). On April 19, 1985, the USEPA issued an NOV to Riverside, notifying the defendant that its Geneva, Illinois, facility was in violation of these regulations.[3] The USEPA claims that it then engaged in extensive negotiations with Riverside regarding the alternatives available to correct the alleged violations.[4]

On October 22, 1986, Riverside filed suit in Illinois Circuit Court against the Illinois Environmental Protection Agency (IEPA), seeking a declaratory judgment that its operating permit was valid because its facility was not and never was intended to be classified as a "paper coating" operation within the meaning of the Illinois regulation.[5] Riverside also alleges that prior to the adoption of the paper coating regulation, the IEPA itself did not consider Riverside to be a paper coater. Consequently, Riverside claims, it was not given notice and an opportunity to be heard at the IPCB hearings conducted to determine the economic impact of the regulation; nor was Riverside able to submit proposed amendments or alterations to the regulation or to file a timely appeal with the Illinois Appellate Court as a party adversely affected or threatened by the regulation. The categorization of Riverside as a paper coater, the defendant contends, would therefore violate its procedural due process rights.

After Riverside filed its state court declaratory action, the USEPA filed this suit in federal court, seeking injunctive and monetary relief for Riverside's alleged violations of the Illinois SIP.[6] On April 3, 1987, the IEPA refused to renew Riverside's operating permit, in part on the ground that Riverside was a paper coater and was not in compliance with the applicable regulation. Riverside then appealed the IEPA's decision to the IPCB on May 7, 1987. Thus, the issue whether Riverside is a paper coater is now before two state tribunals—the Illinois Circuit Court and the IPCB—as well as before this court. The

**2.** Section 7413(a)(1) provides as follows:
(a) Finding of violation; notice ...
(1) Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. If such violation extends beyond the 30th day after the date of the Administrator's notification, the Administrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action in accordance with subsection (b) of this section.

**3.** The USEPA alleges that this facility has four manufacturing lines that coat paper and fabric surfaces. The coatings Riverside uses, the USEPA claims, contain VOC's and other compounds that are volatilized and emitted into the atmosphere during the coating application and subsequent drying processes.

**4.** Riverside acknowledges that it engaged in some negotiations with the USEPA, but denies

that negotiations took place during the several months preceding the filing of Riverside's state court suit.

**5.** In its complaint for declaratory judgment, Riverside claims that it is not a paper coater because it does not utilize any equipment or process that applies a surface coating to any material. Rather, Riverside claims that its process involves "resin impregnation"—a complete saturation, not simply a surface coating, of the materials.

**6.** After the USEPA filed the federal suit, the IEPA attempted to remove the state court action to the United States District Court for the Northern District of Illinois. Judge McGarr remanded the suit to state court because the SIP is state law and the court therefore had no federal question jurisdiction. *Riverside Labs., Inc. v. Illinois Environmental Protection Agency*, No. 86 C 9890, slip op. at 3 (N.D.Ill. Mar. 5, 1987) [Available on WESTLAW, 1987 WL 7836].

issue whether Riverside has violated the fabric coating regulation, on the other hand, is before this court only.

## II. Analysis

When a federal district court has subject matter jurisdiction over a case, it has a " 'virtually unflagging obligation' " to exercise that jurisdiction. *Illinois Bell Tel. Co. v. Illinois Commerce Comm'n*, 740 F.2d 566, 569 (7th Cir.1984) (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)). The judge-made doctrine of abstention, by which a federal district court declines to exercise or postpones the exercise of its jurisdiction, is an " 'extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' " *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244 (*quoting County · of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). Abstention is proper only " 'in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' " *Id.* (*quoting County of Allegheny*, 360 U.S. at 189, 79 S.Ct. at 1063).

The Supreme Court has recognized several forms of abstention.[7] Riverside claims that three abstention principles apply to this case: *Pullman, see Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Colorado River;* and *Burford, see Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

### A. *Pullman Abstention*

*Pullman* abstention is appropriate " 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244 (*quoting County of Allegheny*, 360 U.S. at 189, 79 S.Ct. at 1063); *see also Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 567–68 (7th Cir.1986) ("[*Pull-*

*man* abstention] authorizes, and in appropriate cases directs, a district court to withhold decision of a federal constitutional issue pending determination in state court of an issue of state law which may, depending on how it is resolved, moot the constitutional issue."). *Pullman* abstention was designed to avoid "unnecessary federal constitutional challenges to state laws, thereby avoiding needless friction between the state and federal governments." *Wynn v. Carey*, 582 F.2d 1375, 1380 (7th Cir.1978).

For a federal court to invoke *Pullman* abstention, three elements must be present: (1) There must be an unclear or unsettled state law; (2) this state law must be susceptible to a narrowing interpretation by a state court; and (3) this narrowing construction should render unnecessary the federal court's determination of the federal constitutional issue. In addition, because the abstention doctrine is "rooted in equity," a court should balance "the need for clarification [of the uncertain state law] ... against the effects of abstaining." *Id.* at 1381. If the federal court decides that *Pullman* abstention applies, it retains jurisdiction over the case pending state court decision of the state law issue; if disposition of the state issue does not resolve the controversy, the federal court can reassert its jurisdiction and rule on the federal constitutional issue. *Moses v. County of Kenosha*, 826 F.2d 708, 710 (7th Cir.1987) (per curiam).

This court concludes that *Pullman* abstention is appropriate in this case. First, there exists a state law—the Illinois SIP—that is unclear in its application to Riverside's manufacturing operations. The USEPA argues that the SIP is not state law, but rather is federal law that the USEPA can interpret and enforce independent of any state court construction. This argument, however, is contrary to Seventh Circuit precedent. In *Bethlehem Steel Corp. v. Gorsuch*, 742 F.2d 1028, 1035–36 (7th Cir.1984), the court held that the USEPA cannot make an SIP more stringent

---

7. For a discussion of the various forms of abstention, see C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 4241–4255 (1st ed. 1978) [hereinafter Wright & Miller].

than intended by the state without following the procedures set out in the Clean Air Act. *See also Riverside Labs., Inc. v. United States*, No. 86 C 9890, slip op. at 3 (N.D.Ill. Mar. 5, 1987) [Available on WESTLAW, 1987 WL 7836] ("[T]he Federal Clean Air Act merely provides the authority for the state to enact the SIP. The SIP retains its character as state law."). Because "claims based on the scope and application of the SIP are essentially ones of state law," *id.*, the USEPA's right to enforce the SIP in federal court depends upon the Illinois courts' interpretation of the regulation. If the state courts rule that the regulation does not apply to Riverside, the USEPA cannot make the regulation more stringent by enforcing it against Riverside.

Next, this unclear state law is "susceptible" to a narrowing interpretation that could obviate decision on a federal constitutional question: if the state courts hold the regulation inapplicable to Riverside, the federal procedural due process issue would be mooted. The USEPA claims, however, that the SIP is not "susceptible" to a narrowing interpretation because it is "unlikely" that the state courts will find the paper coating regulation inapplicable to Riverside. To support this argument, the USEPA contends that the state courts will adhere to a basic principle of administrative law and defer to the IEPA's interpretation that Riverside is a paper coater. Riverside disagrees, arguing that the state courts will not defer to the IEPA's determination because it is plainly erroneous and inconsistent with its prior interpretation of the regulation as being inapplicable to Riverside.[8] *See Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d 408, 412 (7th Cir.1987) ("When an agency waffles without explanation, taking one view one year and another the next, ... [c]ourts are corresponding-

ly less willing to accept the agency's latest word as authoritative; maybe it is no better and no more enduring than the last warble.") (*citing Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)).

This court need not predict with certitude the outcome of the state proceedings. Rather, the court's only task is to determine whether the state law is "susceptible" to a narrowing construction—that is, whether a state court "might," *see Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244, or "could," *see Board of Educ. v. Bosworth*, 713 F.2d 1316, 1321 (7th Cir.1983), narrowly construe the law so as to render moot the federal constitutional issue. Given that the IEPA—the body that promulgated the regulation—at first apparently did not consider Riverside to be a paper coater, as well as the fact that until April 3, 1987, the IEPA issued Riverside operating permits without classifying it as a paper coater, it certainly is possible that the state courts could find the regulation inapplicable to Riverside.

Finally, the equities in this case militate in favor of *Pullman* abstention. Unlike the typical *Pullman* abstention case, in which there are no parallel state proceedings and the federal court orders the parties to begin anew in the state courts,[9] in this case there already are two ongoing state proceedings. The USEPA's interest—if any—in premature enforcement of the regulation (that is, before the state courts have determined its applicability to Riverside) is outweighed by the state's interest in initially interpreting the scope of its own SIP. Moreover, the existence of the USEPA's concurrent authority to enforce the SIP does not necessarily make abstention inappropriate, especially when, as in this case, a state court interpretation

---

**8.** *See* Riverside's Reply Memorandum in Support of Motion to Stay at 12–13:

Obviously, the IEPA for many years did not consider Riverside to be subject to the Illinois SIP provisions concerning papercoaters.

It is clear that the IEPA's relatively recent change of position to classify Riverside as a papercoater is erroneous or, at the least, inconsistent with its own prior interpretation of

the applicability of the paper coating regulation to Riverside.

**9.** If state law provides for it, the federal court also may certify the question to the state supreme court. The Illinois Supreme Court Rules allow for certifications from the United States Court of Appeals for the Seventh Circuit. *See Collins Co. v. Carboline Co., Pureco Sys.*, 837 F.2d 299, 303 (7th Cir.1988).

could obviate decision of a federal constitutional issue. *See United States v. Interlake, Inc.*, 429 F.Supp. 193, 197 (N.D.Ill. 1977).

### B. *Colorado River Abstention*

■ Reinforcing *Pullman* abstention in this case are elements of *Colorado River* abstention,[10] which applies when there are parallel federal and state proceedings. As a general rule, " 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....' " *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (*quoting McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)). Nevertheless, parallel actions may lead to what the Seventh Circuit has termed " 'a grand waste of efforts by both the courts and parties....' " *Illinois Bell*, 740 F.2d at 569 (*quoting Microsoftware Computer Sys., Inc. v. Ontel Corp.*, 686 F.2d 531, 538 (7th Cir.1982)). Federal courts, therefore, have exercised their discretion to stay proceedings pending resolution of parallel state court actions, provided that certain "exceptional circumstances" are present. Abstention in these situations is based not on "considerations of proper constitutional adjudication and regard for federal-state relations," but on considerations of " '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (*quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). If a federal court abstains because of parallel state proceedings, the principles of res judicata and collateral estoppel would apply to any subsequent proceeding, so long as the state court action adequately protected the parties' rights. *See Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 697 (7th Cir.1985) (" 'Redetermination of issues is warranted if

there is reason to doubt the quality, extensiveness, or fairness of procedures followed in the prior litigation.' ") (*quoting Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979)).

■ *Colorado River* and its progeny have enumerated the following factors that a federal court should consider in deciding whether to abstain: (1) Whether the state or federal court has assumed jurisdiction over property; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forum; (5) the source of the governing law—state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1247; *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *Lumen*, 780 F.2d at 694.

Unlike *Pullman* abstention, *Colorado River* abstention does not require the presence of an unsettled state law issue that might moot a federal constitutional question. The procedural consequences, on the other hand, are similar. Although *Colorado River* involved a dismissal of the federal case, and the Court in *Cone* reserved decision on whether a dismissal or stay would be appropriate, 460 U.S. at 28; *see also Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 570 n. 21, 103 S.Ct. 3201, 3215 n. 21, 77 L.Ed.2d 837 (1983), the Seventh Circuit has held that a stay is normally the preferred choice. *See Lumen*, 780 F.2d at 698 ("This Court ... has consistently held that the proper procedure is to stay. A dismissal, even without prejudice, creates a risk that the federal plaintiff will be time-barred from reinstating his federal suit if

---

**10.** "Although the Court [in *Colorado River*] was unwilling to use the name 'abstention,' it was prepared to recognize [another] category of cases in which federal courts should decline to exercise their jurisdiction." Wright & Miller, *supra* note 7, § 4247, at 515. The Seventh Circuit, on the other hand, has referred to this declining of jurisdiction as "abstention." *See, e.g., Oliver v. Fort Wayne Educ. Ass'n, Inc.*, 820 F.2d 913, 915 (7th Cir.1987).

the state proceeding does not result in a final decision on the merits.") (*citing Bosworth*, 713 F.2d at 1322; *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717–18 (7th Cir.1982)).

■ In this case, several factors militate against *Colorado River* abstention: Neither court has assumed jurisdiction over property; the federal forum is not geographically inconvenient; and the state and federal suits were filed at approximately the same time.[11] Nevertheless, the decision whether to abstain under *Colorado River* " 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case....' " *Illinois Bell*, 740 F.2d at 570 (*quoting Cone*, 460 U.S. at 16, 103 S.Ct. at 937).

The salient factors here are the predominance of the state law issue (the interpretation of Illinois' SIP); the possibility of avoiding an unnecessary decision of a federal constitutional issue; the fact that the state court proceedings have progressed further on the merits than those in federal court; and the avoidance of duplicative litigation. Absent a stay of the federal action, this court could be determining the extent of Riverside's liability under the paper coating regulation before the Illinois courts have had the opportunity to determine its applicability to Riverside. If this court concludes that the regulation is applicable to Riverside, and the state tribunals would have decided otherwise, the effect would be to make the SIP more stringent than the state originally intended—a result

contrary to the Seventh Circuit's holding in *Bethlehem Steel.*

The fact that the federal suit also involves the fabric coating regulation, and hence that the federal and state actions are not precisely parallel, does not change the decision to abstain in this case. *See Hickey v. Duffy*, 827 F.2d 234, 246 (7th Cir. 1987) (Flaum, J., concurring) (In considering the piecemeal-litigation factor, the court should determine whether there is a " 'substantial likelihood that the state litigation will dispose of all claims present[ed] in the federal case.' ") (*quoting Lumen*, 780 F.2d at 695). First, it is this court's understanding, based upon the statements of counsel for both parties in open court, that the bulk of the federal case concerns the paper coating regulation and that a state court decision holding the paper coating regulation inapplicable to Riverside would, as a practical matter, dispose of the federal suit. *See Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 686 (7th Cir.1987) (emphasizing pragmatic concerns in dealing with *Colorado River* abstention).[12]

Second, the duplicative-litigation factor is not dispositive, for the fact that this court may avoid an unnecessary decision of a constitutional issue bears heavily on the decision. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246 ("[*In* ] *the absence of weightier considerations of constitutional adjudication and state-federal relations*, the circumstances permitting the dismissal of a federal suit due to the presence

---

**11.** Both parties in this case claim that the other was "reactionary" in filing its suit. The defendant claims that the USEPA could have filed suit 30 days after the April 1985 NOV, but did not file until after it learned of Riverside's state court suit. The USEPA claims that it tried to avoid litigation by negotiating extensively with Riverside following the NOV. When these negotiations failed, the USEPA claims, it began the process of filing an enforcement action in federal court. The USEPA contends that Riverside learned of these plans and anticipatorily filed its declaratory judgment action. At this stage of the federal suit, the parties have not presented the court with appropriate evidence to determine which, if either, of the parties has been reactionary. In any event, the timing of the respective suits is not dispositive to the decision

whether to abstain under *Colorado River;* the court therefore makes no finding with respect to this factor.

**12.** The court acknowledges, however, that even if the state and federal proceedings dealt with the identical issue—i.e., the applicability of the paper coating regulation—a state court decision on the merits would not necessarily dispose of the federal case: if the state courts determine that the regulation does apply to Riverside, then this court would have to deal with Riverside's federal constitutional claim. In that respect, this case is not a classic example of *Colorado River* abstention. Nevertheless, this court holds that the other factors relevant to the balancing process weigh in favor of abstention.

of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for [other forms of] abstention.") (emphasis added).

Third, this court is not dismissing the federal case, but rather is simply ordering a stay of the proceeding pending the outcome of the state court litigation. If necessary, this court can reassert its jurisdiction to determine the extent of Riverside's liability under the SIP. *See Lumen,* 780 F.2d at 698 (A stay allows a federal court "to retain jurisdiction in case the state court action does not meet its anticipated end. A stay has the additional advantage of bringing the case back before the same federal judge if a determination is needed as to the preclusive effects of the state judgment or decisions.").

Finally, the state court action, even though a declaratory action and not an enforcement proceeding, is adequate to protect the federal plaintiff's rights. If the state courts find the regulation inapplicable, the USEPA may not enforce it against Riverside; and if the state courts find the regulation does apply to Riverside, then this court will reassert its jurisdiction and proceed with the USEPA's federal enforcement action. *See also Riverside Labs.,* slip op. at 4 (Riverside should be allowed to use favorable outcome in state court as res judicata defense to federal suit: "The state is the proper entity to determine the scope and application of its own regulations. The USEPA must then enforce what the state has decreed."). There is no indication that the state court proceedings have been stalled or unreasonably delayed. Thus, there is no need at this point for the court

to exercise jurisdiction in order to protect the USEPA's rights.[13]

### C. *Burford Abstention*

■ *Burford* abstention applies when the state has a unified scheme for review of its administrative orders and federal judicial review would have a disruptive effect on the state's efforts to establish a coherent policy on a matter of substantial public concern. *Evans v. City of Chicago,* 689 F.2d 1286, 1295 (7th Cir.1982); *Cash Currency Exch., Inc. v. Shine (In re Cash Currency Exch., Inc.),* 37 B.R. 617, 629 (N.D.Ill.1984), *aff'd,* 762 F.2d 542, 556 (7th Cir.), *cert. denied sub nom. Fryzel v. Cash Currency Exch., Inc.,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985). Factors to consider in deciding whether to abstain under *Burford* are the presence of a complex and important issue of traditional state concern; the creation of a specialized state agency and the consequent superior competence of state tribunals; the possibility of disruption to the state's administrative scheme by the mere exercise of federal judicial review; and the need for coherent state doctrine in the area. *See Adams v. Attorney Registration & Disciplinary Comm'n of the Supreme Court,* 600 F.Supp. 390, 396 (N.D.Ill.1984), *aff'd on other grounds,* 801 F.2d 968 (7th Cir.1986).

■ *Burford* abstention, unlike that under either *Pullman* or *Colorado River,* requires neither unclarity in a state law nor parallel state proceedings. Moreover, the procedural consequences of *Burford* abstention are different: under *Burford,* the court normally dismisses[14]—rather than stays—the federal proceeding and thereby relegates the federal issue to state court.

---

**13.** The court's decision in *Interlake* is instructive. There, the United States sought injunctive relief to prohibit the defendant from operating its by-product coke production facility because of alleged violations of Illinois' SIP. The defendant also had been charged with identical violations before the IPCB. The defendant alleged that the regulation, as applied by the plaintiff, was vague and therefore was a violation of due process. The court held that abstention in the case was appropriate not only to avoid the possibility of unnecessary resolution of a federal constitutional issue, but also to avoid piecemeal litigation "involving complex

issues of technology which under the Clean Air Act are in large measure the first concern of the state." 429 F.Supp. at 198.

**14.** Because *Burford* abstention "is premised on a belief that in particular areas of the law any intervention by the federal court would have an impermissibly disruptive effect on state policies[,] ... the proper course ... is to dismiss the action rather than to retain jurisdiction." 17 Wright & Miller, *supra* note 7, § 4245, at 490–91.

*See, e.g., Wynn,* 582 F.2d at 1383.[15] Thus, the only federal review of federal issues is that of the United States Supreme Court reviewing the decision of the state supreme court. *See, e.g., McNeese v. Board of Educ.,* 373 U.S. 668, 673, 83 S.Ct. 1433, 1436, 10 L.Ed.2d 622 (1963) ("Thus we have stayed the hands of a Federal District Court when it sought to enjoin enforcement of a state administrative order enforcing the state law, since any federal question would be reviewed when the case came here [the United States Supreme Court] through the hierarchy of state courts.") (*citing Burford*).

This court concludes that *Burford* abstention would be inappropriate in this case. The Illinois SIP, although state law that should be interpreted initially by the state courts, may be enforced in federal court. Thus, the SIP is not a matter of specialized and purely local concern, but rather an issue of both federal and state concern: although the state initially develops the SIP, the USEPA must approve it; only then may the SIP be enforced independently by both the USEPA and the state authorities. Abstention on *Burford* grounds in these cases effectively would preclude USEPA enforcement in federal court, for the only federal review would be that of the United States Supreme Court —a result clearly at odds with the Act's federal enforcement provision.

### III. Conclusion

This case is not a textbook example of either *Pullman* or *Colorado River* abstention. Nevertheless, the different forms of abstention "are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, 107 S.Ct. 1519, 1526 n. 9, 95 L.Ed.2d 1 (1987). In essence, this case merits *Pullman* abstention with a *Colorado River* twist: staying the proceedings in the federal suit will avoid not only the possibility of unnecessary resolution of a federal constitutional issue, but will also avoid duplicative litigation on a state law issue—an issue that currently is being considered by two state tribunals. *See Interlake,* 429 F.Supp. at 198. For these reasons, this court grants the defendant's motion to stay the federal enforcement action pending resolution of the state court proceedings.

---

**15.** *See also* Wright & Miller, *supra* note 7, § 4244, at 434 (footnotes omitted) ("In Burford the holding was that the complaint should be dismissed. Thus Burford announced a complete hands-off policy for the federal courts in the type of case there involved, rather than the postponement that had been contemplated in Pullman.").