**STANDING ROCK HOUSING AUTHORITY, Plaintiff,**

v.

**TRI–COUNTY STATE BANK, INC., Defendant.**

Civ. No. 87–3024.

United States District Court, D. South Dakota, C.D.

Sept. 15, 1988.

Terry L. Pechota, Finch, Viken, Viken & Pechota, Rapid City, S.D., Mary Maywalt, James F. Wagenlander, Wagenlander & Associates, Denver, Colo., for plaintiff.

David J. Larson, Robert R. Schaub, Larson, Sundall, Larson, Schaub & Fox, P.C., Chamberlain, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Plaintiff Standing Rock Housing Authority ("Standing Rock") brought this action to seek recovery on a $188,000 irrevocable standby letter of credit issued by Defendant Tri–County State Bank ("Tri–County"). The complaint is based on diversity jurisdiction. Standing Rock has moved for summary judgment, and Tri–County has filed a motion to dismiss.

### I. FACTS

On August 7, 1985, Standing Rock and the Lower Brule Construction Company ("Lower Brule") entered a construction contract for the renovation of a housing project in Fort Yates, North Dakota on the Standing Rock Sioux Indian Reservation. As a part of the contractual arrangement, Lower Brule obtained an irrevocable standby letter of credit from Tri–County naming Standing Rock as the beneficiary. The standby letter of credit served as a replacement for a performance bond to assure Lower Brule's performance under the contract. The letter entitled Standing Rock to obtain up to $188,000 from Tri–County if Lower Brule defaulted.

The renovation did not progress according to plan, and Lower Brule failed to pay several subcontractors. On March 27, 1987, one of those subcontractors—Sheesley's Plumbing and Heating Co., Inc.

("Sheesley's")—made a demand against the letter of credit by claiming to be a third party beneficiary entitled to draw against the letter. A month later, on April 24, 1987, Standing Rock made a demand on Tri–County for payment under the letter of credit. Tri–County responded to these demands by filing an action on April 30, 1987 in South Dakota state court to determine its rights and liabilities under the letter.[1]

Lower Brule filed a Chapter 11 bankruptcy petition on May 4, 1987. Four days later, Standing Rock brought this suit for recovery under the letter of credit. Then, on May 14, 1987, Lower Brule commenced an adversary bankruptcy proceeding against Standing Rock and requested the bankruptcy court to enjoin payment under the letter of credit.[2]

On June 1, 1987, Standing Rock filed a petition to remove Tri–County's letter of credit suit to this Court. Then, the Bankruptcy Court enjoined the two letter of credit actions from further proceeding. *See* Order of Bankruptcy Court filed June 18, 1987, Adversary No. 87–3013. On review, this Court dissolved the Bankruptcy Court's injunction in both the adversary bankruptcy proceeding and this case, and abstained from hearing the adversary proceeding pursuant to the discretionary abstention power embodied in 28 U.S.C. § 1334(c)(1). *Lower Brule Const. Co. v. Sheesley's Plumbing & Heating Co., Inc.*, 84 B.R. 638 (D.S.D.1988). This Court also remanded the letter of credit action to state court because there was no basis for federal court subject matter jurisdiction. *Lower Brule Const. Co. v. Sheesley's Plumbing & Heating Co., Inc.*, 682 F.Supp. 1039 (D.S. D.1988). This Court now confronts Standing Rock's suit for recovery on the letter of credit. Based on considerations of wise judicial administration, this Court abstains from deciding and stays this case pending state court resolution of the interpleader suit to determine rights and liabilities in the letter of credit.

## II. DISCUSSION

### A. Abstention Doctrines

In *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976), the Supreme Court recognized three abstention doctrines: 1) *Pullman* abstention, where a state court determination of pertinent state law may moot a federal constitutional issue; 2) *Thibodeaux* or *Burford* abstention, where the federal court faces difficult questions of state law bearing on policy problems of substantial public importance transcending the case then at bar; and 3) *Younger* abstention, where federal jurisdiction has been invoked to restrain state criminal or tax proceedings. This case does not fit into any of these three abstention doctrines. *Colorado River*, however, articulated a fourth abstention category based on "exceptional circumstances" and "considerations of wise judicial administration." This case presents such exceptional circumstances to warrant abstention under *Colorado River*.

*Colorado River* involved the allocation of water rights. The United States sued in federal court on its behalf and on behalf of several Indian tribes against some 1,000 water users. Relying on the McCarran Amendment,[3] a defendant in the federal action sought to compel the government to litigate all claims under a comprehensive Colorado scheme for resolving water disputes. *Id.* 424 U.S. at 802–06, 96 S.Ct. at 1239–40. The district court dismissed the federal suit on abstention grounds, but the court of appeals reversed by finding abstention inappropriate. After determining that none of the three aforementioned abstention doctrines encompassed the case, the Supreme Court decided that the federal case should be dismissed because consider-

---

1. This action was filed in the Circuit Court for the Fourth Judicial Circuit, County of Brule and was numbered 87–42. This case was renumbered Civ. 87–3040 on removal to this Court.

2. In this Court, the adversary proceeding was numbered Civ. 87–3040.

3. The McCarran Amendment is codified at 43 U.S.C. § 666. It essentially permits the federal government to be joined as a defendant in state court adjudications of water rights.

ations of " 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' " favored deference to the concurrent state court proceeding. *Id.* at 817, 96 S.Ct. at 1246, *quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). The Court nonetheless stressed that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* 424 U.S. at 818, 96 S.Ct. at 1246.

In *Moses H. Cone Memorial Hospital v. Mercury Const. Co.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court reviewed and reaffirmed *Colorado River.* Despite the presence of a concurrent state proceeding, the Court in *Moses H. Cone* decided not to stay or dismiss the federal suit at bar. *Colorado River* and *Moses H. Cone* frame the abstention analysis by providing examples of when abstention is and is not warranted.

■ Both *Colorado River* and *Moses H. Cone* warn that *Colorado River* abstention is "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* 460 U.S. at 21, 103 S.Ct. at 939; *see Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246. In addition, the

Supreme Court recently has stated that forms of abstention are not "rigid pigeonholes" but "reflect a complex of considerations." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, —— n. 9, 107 S.Ct. 1519, 1526 n. 9, 95 L.Ed.2d 1, 16 n. 9 (1987).[4] Nevertheless, federal courts have derived a multifactored test from *Colorado River* and *Moses H. Cone* to guide application of *Colorado River* abstention. These factors include: 1) the inconvenience of the federal forum, 2) the desirability of avoiding piecemeal litigation; 3) the order in which jurisdiction was obtained by the courts; 4) the source of governing law; 5) the adequacy of the state court action to protect the rights of the parties; and 6) the relative progress of the state and federal suits.[5] *Fiedler by Fiedler v. Reliance Elec. Co.,* 823 F.2d 269, 270 (8th Cir.1987).

### B. Abstention Factors

#### 1. *Inconvenience of the Federal Forum.*

In *Colorado River,* the Supreme Court found inconvenience of the federal forum to favor abstention when 300 miles separated the federal court from the more convenient state forum. 424 U.S. at 820, 96 S.Ct. at 1247. In this case, the state court is within 100 miles of this Court. *Cf., Noo-*

---

**4.** In *Pennzoil,* the Supreme Court directed the district court to abstain based on *Younger* abstention in a suit challenging a state court judgment. In response to an argument that *Pullman* abstention rather than *Younger* abstention applied, the Court stated:

> ... considerations similar to those that mandate Pullman abstention are relevant to a court's decision whether to abstain under Younger. [citation omitted] The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of consideration designed to soften the tensions inherent in a system that contemplates parallel judicial processes.

481 U.S. at —— n. 9, 107 S.Ct. at 1526 n. 9, 95 L.Ed.2d at 16 n. 9. *See also United States v. Riverside Laboratories, Inc.,* 678 F.Supp. 1352, 1361 (N.D.Ill.1988) (where case is not a "textbook example" of any abstention doctrine, court abstains based on *"Pullman* abstention with a *Colorado River* twist").

This Court finds sufficient support under *Colorado River* to warrant abstention without reliance on elements of other abstention doc-

trines. It is noteworthy nonetheless that this case presents a novel issue of state law—rights in a standby letter of credit. Although South Dakota has a well developed body of law on traditional letters of credit, standby letters of credit may merit different treatment. *See Midstates Excavating, Inc. v. Farmers & Merchants Bank,* 410 N.W.2d 190 (S.D.1987) (suppliers not named as beneficiaries could sue to enforce standby letter of credit). This uncertainty in state law on an important legal question weighs in favor of abstention in *Thibodeaux* or *Burford* abstention and in discretionary abstention under 28 U.S.C. § 1334(c)(1), which bolsters the conclusion that abstention is proper in this case.

**5.** Other courts have considered the following factors to favor abstention: the federal claim is vexatious or contrived; concurrent jurisdiction exists; removal of the state claim is unavailable; and the issues in the two forums are identical. *See Lumen Const., Inc. v. Brant Const. Co., Inc.,* 780 F.2d 691, 694–95 (7th Cir.1985); *Sea Colony, Inc. v. Alcan Aluminum Corp.,* 653 F.Supp. 1323, 1326 (D.Del.1987). These last three factors militate for abstention in the instant case.

*nan South, Inc. v. County of Volusia,* 841 F.2d 380, 382 (11th Cir.1988) (fifty mile distance between state and federal court is negligible in *Colorado River* analysis). Indeed, for Tri–County and its attorneys the state forum is more convenient, and for Standing Rock's attorneys the state forum is as close as this Court. Consequently, this first factor basically is neutral and may slightly favor abstention.

### 2. *Avoiding Piecemeal Litigation.*

At the core of Colorado River abstention is the desire to avoid piecemeal litigation. In *Colorado River,* the Court dismissed the federal case to avert fragmented adjudication of water rights. 424 U.S. at 819–20, 96 S.Ct. at 1247. By contrast, the Court in *Moses H. Cone* found that piecemeal litigation was inevitable due to the Arbitration Act and thus found abstention inappropriate in that case. 460 U.S. at 19–21, 103 S.Ct. at 938–939.

Unlike in *Moses H. Cone,* no federal law makes piecemeal adjudication inevitable in the instant case. Instead, this case is closely analogous to *Colorado River.* As in *Colorado River,* this federal suit presents the same issue of rights in a limited resource as presented in the concurrent multi-party state court action. The potential for inequitable or conflicting judgments is clear.[6] Adjudication of the same question in state and federal courts would result in duplication of efforts and would undermine comprehensive disposition of rights in the letter of credit. Thus, the desire to avoid piecemeal litigation militates heavily in favor of abstention.

### 3. *Order in Which Jurisdiction was Obtained.*

This factor is of slight weight in analysis of *Colorado River* abstention since it commonly rewards the party who won the

"race to the courthouse." *See Evans Transp. Co. v. Scullin Steel Co.,* 693 F.2d 715, 718–19 (7th Cir.1982). In this case, Tri–County was first to file its state court action, edging out Standing Rock's federal court filing by a few days. Standing Rock, however, apparently completed service of process first, arguably giving Standing Rock the honor of being first to commence an action. *See Fischer v. Iowa Mold Tooling Co.,* 690 F.2d 155, 156 (8th Cir.1982) (South Dakota law requires service of process to commence action). When two actions were commenced within days of one another, the inquiry into which court first obtained jurisdiction provides little guidance on whether to abstain.

Standing Rock argues that the state court does not have and cannot obtain jurisdiction over Standing Rock since it is an agency of the Standing Rock Sioux Tribe. Standing Rock's argument misses the mark. The *Colorado River* inquiry into order of jurisdiction focuses upon which court first was able to hear the *issue* presented in both federal and state courts. Identity of the parties in each suit is not a prerequisite for *Colorado River* abstention. *See, e.g., Ramirez v. Skeete,* 671 F.Supp. 892, 894 (D.Puerto Rico 1987) ("nowhere in *Colorado River* is identity of parties or issues required to trigger [the] doctrine"; abstention invoked though litigants not identical in state and federal suits). This Court and the state court obtained jurisdiction to resolve the issue of rights in the standby letter of credit at about the same time.

### 4. *Source of Governing Law.*

State law governs rights and liabilities under a standby letter of credit and thus clearly provides the rule of decision in this case. This factor thus favors abstention.

---

6. There are at least three possibilities for unsavory results if this Court does not abstain. First, if this Court were to decide in favor of Tri–County and the state court were to find subcontractors not entitled to standby letter of credit proceeds, Tri–County might enjoy an inequitable windfall at the expense of Standing Rock and Lower Brule creditors. Second, if this Court found Standing Rock entitled to the

$188,000 and the state court adjudged Lower Brule subcontractors entitled to the $188,000, Tri–County would be liable in excess of its contractual obligations. Each of these results also might establish conflicting precedents regarding rights in standby letters of credit. Finally, a decision not to abstain may spur a race to effect judgment followed by additional litigation over the judgment's res judicata.

5. *Adequacy of State Court to Protect Plaintiff's Rights.*

The inquiry into the adequacy of the state court derives from *Moses H. Cone,* in which the Court found abstention improper when the state court may have lacked authority to compel the remedy sought in federal court. 460 U.S. at 26–27, 103 S.Ct. at 942–943 (North Carolina court may be unable to compel arbitration under Arbitration Act). This factor concentrates on whether the state court is able to fashion relief and not on whether the state court might harbor potential biases, as Standing Rock appears to argue.[7] *Kent v. Cook,* 637 F.Supp. 1005, 1010 (N.D.Ind.1986). The state court before which the interpleader action is pending is capable of providing the relief that Standing Rock requests by issuing a declaratory order that Tri–County is obliged to pay Standing Rock on the letter of credit.

6. *Relative Progress of the Suits.*

*Colorado River* abstention seeks to minimize the wasted efforts of federal courts and litigants resulting from duplicative litigation of concurrent state and federal cases. Consequently, the doctrine favors abstention when the concurrent state proceeding is more advanced and disfavors abstention when the federal case has proceeded farther.

Although the state suit over the letter of credit apparently is not as far along, the instant case primarily consists of pleadings which could be submitted before the state court. What little discovery or trial preparation has occurred in this case certainly is not wasted since the state proceeding is so closely related. *Cf., Lumbermen's Mut. Casualty Co. v. Connecticut Bank & Trust Co.,* 806 F.2d 411, 415 (2d Cir.1986) (federal court progress discounted in part because litigants could transfer fruits of efforts to state litigation). Therefore, although the greater progress in this suit militates for abstention, the factor is of limited weight under these circumstances.

C. *Conclusion*

■ These considerations convince this Court that it should exercise its discretion to abstain from deciding this case. Here, "exceptional circumstances" exist; federal adjudication would cause piecemeal litigation, wasted judicial resources, inconvenience to the litigants, and possibly conflicting results. Indeed, the state court is better able to determine rights and liabilities in the letter of credit in one fell swoop. *Cf., Fiedler by Fiedler v. Reliance Elec. Co.,* 823 F.2d 269, 270–71 (8th Cir.1987) (dismissal under *Colorado River* approved where effect is state adjudication of state law claim in "one fell swoop").

This Court can stay or dismiss this action under *Colorado River.* *See Moses H. Cone,* 460 U.S. at 27–28, 103 S.Ct. at 943. Because of the involvement of a tribal agency and the longstanding trust relationship between the federal government and Native Americans, this Court stays this action in case the state action flounders.

---

7. Standing Rock argues that abstention will abridge its "right to select a neutral forum" and suggests that it may be subject to "local prejudice and sectional bias" in state court. *See* Plaintiff's Reply Brief in Opposition to Motion to Dismiss, filed July 1, 1988. This Court finds these arguments unpersuasive.

This Court also finds Standing Rock's reliance on *Showers v. Sasse,* 588 F.Supp. 1297 (D.S.D. 1984) misguided. In *Showers,* Judge Bogue decided not to abstain in favor of a concurrent state proceeding when the state court lacked jurisdiction and could not enforce its judgment on the reservation. *Id.* at 1301. By contract, the state court in the case at hand has jurisdiction to determine rights and liabilities in the standby letter of credit. Also, the state court will not need to enforce its decision on a reservation; the state court order will relate only to Tri–County by directing to whom Tri–County must pay under the letter of credit. In addition, the involvement of a tribe in the suit does not necessarily render *Colorado River* abstention inappropriate. Indeed, abstention in *Colorado River* sent an issue of Indian water rights to a state court for adjudication. *See also Jicarilla Apache Tribe v. United States,* 601 F.2d 1116 (10th Cir.1979) *cert. denied* 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426.